**Case No. 25-4988**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

———————————

SAN FRANCISCO AIDS FOUNDATION, *et al.*,

Plaintiffs-Appellees,

v.

DONALD J. TRUMP, *et al.*,

Defendants-Appellants.

———————————

On Appeal from the United States District Court
for the Northern District of California

———————————

## ADDENDUM TO ANSWERING BRIEF FOR PLAINTIFFS-APPELLEES
## SAN FRANCISCO AIDS FOUNDATION, et al.

———————————

Camilla B. Taylor
Kenneth D. Upton, Jr.
**Lambda Legal Defense and
Education Fund, Inc.**
3656 North Halsted Street
Chicago, Illinois 60613-5974
(312) 663-4413

Jennifer C. Pizer
**Lambda Legal Defense and
Education Fund, Inc.**
800 South Figueroa Street, Ste. 1260
Los Angeles, California 90017-2521
(213) 382-7600

Jose Abrigo
Omar Gonzalez-Pagan
**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, New York 10005-3919
(212) 809-8585

Karen L. Loewy
**Lambda Legal Defense and
Education Fund, Inc.**
815 16th Street NW, Suite 4140
Washington, DC 20006-4101
(202) 804-6245

# ADDENDUM OF STATUTES, REGULATIONS AND RULES OF COURT

## TABLE OF CONTENTS

### UNITED STATES CONSTITUTION

**Page**

Separation of Powers Clause of the U.S. Constitution, art. I, § 1 ....................1

Presentment Clause of the U.S. Constitution, art. I, § 7, cl. 2 .........................2

Spending Clause of the U.S. Constitution, art. I, § 8, cl. 1...............................3

First Amendment to the U.S. Constitution ........................................................4

Fifth Amendment to the U.S. Constitution ........................................................5

### STATUTES

**Page**

28 U.S.C. § 1491(a) ..........................................................................................6

42 U.S.C. § 254b(a)(1) ......................................................................................7

42 U.S.C. § 254b(b)(1) ......................................................................................8

42 U.S.C. § 300ff .............................................................................................10

42 U.S.C. § 300ff-1 ..........................................................................................11

42 U.S.C. § 300ff-71 ........................................................................................12

42 U.S.C. § 300ff-121(a) ..................................................................................14

42 U.S.C. § 300w-7 ..........................................................................................15

42 U.S.C. § 18116.............................................................................................17

## REGULATIONS

**Page**

24 C.F.R. § 574.603(b) ..............................................................................18

Respectfully submitted,

Camilla B. Taylor
*ctaylor@lambdalegal.org*
Kenneth D. Upton, Jr.
*kupton@lambdalegal.org*
**Lambda Legal Defense and
Education Fund, Inc.**
3656 North Halsted Street
Chicago, Illinois 60613-5974
(312) 663-4413

Jose Abrigo
*jabrigo@lambdalegal.org*
Omar Gonzalez-Pagan
*ogonzalez-pagan@lambdalegal.org*
**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, New York 10005-3919
(212) 809-8585

Jennifer C. Pizer
*jpizer@lambdalegal.org*
Pelecanos*
*pelecanos@lambdalegal.org*
**Lambda Legal Defense and
Education Fund, Inc.**
800 South Figueroa Street, Ste. 1260
Los Angeles, California 90017-2521
(213) 382-7600

Karen L. Loewy
*kloewy@lambdalegal.org*
**Lambda Legal Defense And
Education Fund, Inc.**
815 16th Street NW, Suite 4140
Washington, DC 20006-4101
(202) 804-6245

* *Mailing address only*

*Counsel for Plaintiffs-Appellees*

iii

**Separation of Powers Clause, U.S. Constitution Article I, Section 1**

**Section 1: Congress**

All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives.

## Presentment Clause, U.S. Constitution Article I, Section 7, cl. 2

**Section 7 Legislation**

**Clause 2 Presentment**

Every Bill which shall have passed the House of Representatives and the Senate, shall, before it become a Law, be presented to the President of the United States; If he approve he shall sign it, but if not he shall return it, with his Objections to that House in which it shall have originated, who shall enter the Objections at large on their Journal, and proceed to reconsider it. If after such Reconsideration two thirds of that House shall agree to pass the Bill, it shall be sent, together with the Objections, to the other House, by which it shall likewise be reconsidered, and if approved by two thirds of that House, it shall become a Law. But in all such Cases the Votes of both Houses shall be determined by yeas and Nays, and the Names of the Persons voting for and against the Bill shall be entered on the Journal of each House respectively. If any Bill shall not be returned by the President within ten Days (Sundays excepted) after it shall have been presented to him, the Same shall be a Law, in like Manner as if he had signed it, unless the Congress by their Adjournment prevent its Return, in which Case it shall not be a Law.

## Spending Clause, U.S. Constitution Article I, Section 8, cl. 1

### Section 8: Powers of Congress

### Clause 1 Revenue

The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States;

### First Amendment to The United States Constitution

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

## Fifth Amendment to The United States Constitution

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

## 28 U.S.C. § 1491(a) - U.S. Code - Unannotated Title 28. Judiciary and Judicial Procedure § 1491. Claims against United States generally; actions involving Tennessee Valley Authority

(a)(1) The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

(2) To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States. In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just. The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 7104(b)(1) of title 41, including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act.

## 42 U.S.C. § 254b(a)(1) - U.S. Code - Unannotated Title 42. The Public Health and Welfare § 254b. Health centers

(a)"Health center" defined

(1)In general

For purposes of this section, the term "health center" means an entity that serves a population that is medically underserved, or a special medically underserved population comprised of migratory and seasonal agricultural workers, the homeless, and residents of public housing, by providing, either through the staff and supporting resources of the center or through contracts or cooperative arrangements--

(A) required primary health services (as defined in subsection (b)(1)); and

(B) as may be appropriate for particular centers, additional health services (as defined in subsection (b)(2)) necessary for the adequate support of the primary health services required under subparagraph (A);

for all residents of the area served by the center (hereafter referred to in this section as the "catchment area").

## 42 U.S.C. § 254b(b)(1) - U.S. Code - Unannotated Title 42. The Public Health and Welfare § 254b. Health centers

(b)Definitions

For purposes of this section:

(1)Required primary health services

(A)In general

The term "required primary health services" means--

(i) basic health services which, for purposes of this section, shall consist of--

(I) health services related to family medicine, internal medicine, pediatrics, obstetrics, or gynecology that are furnished by physicians and where appropriate, physician assistants, nurse practitioners, and nurse midwives;

(II) diagnostic laboratory and radiologic services;

(III) preventive health services, including--

(aa) prenatal and perinatal services;

(bb) appropriate cancer screening;

(cc) well-child services;

(dd) immunizations against vaccine-preventable diseases;

(ee) screenings for elevated blood lead levels, communicable diseases, and cholesterol;

(ff) pediatric eye, ear, and dental screenings to determine the need for vision and hearing correction and dental care;

(gg) voluntary family planning services; and

(hh) preventive dental services;

(IV) emergency medical services; and

(V) pharmaceutical services as may be appropriate for particular centers;

(ii) referrals to providers of medical services (including specialty referral when medically indicated) and other health-related services (including substance use disorder and mental health services);

(iii) patient case management services (including counseling, referral, and follow-up services) and other services designed to assist health center patients in establishing eligibility for and gaining access to Federal, State, and local programs that provide or financially support the provision of medical, social, housing, educational, or other related services;

(iv) services that enable individuals to use the services of the health center (including outreach and transportation services and, if a substantial number of the individuals in the population served by a center are of limited English-speaking ability, the services of appropriate personnel fluent in the language spoken by a predominant number of such individuals); and

(v) education of patients and the general population served by the health center regarding the availability and proper use of health services.

(B)Exception

With respect to a health center that receives a grant only under subsection (g), the Secretary, upon a showing of good cause, shall--

(i) waive the requirement that the center provide all required primary health services under this paragraph; and

(ii) approve, as appropriate, the provision of certain required primary health services only during certain periods of the year.

**42 U.S.C. § 300ff - U.S. Code - Unannotated Title 42. The Public Health and Welfare § 300ff. Purpose**

It is the purpose of this Act to provide emergency assistance to localities that are disproportionately affected by the Human Immunodeficiency Virus epidemic and to make financial assistance available to States and other public or private nonprofit entities to provide for the development, organization, coordination and operation of more effective and cost efficient systems for the delivery of essential services to individuals and families with HIV disease.

**42 U.S.C. § 300ff-1 - U.S. Code - Unannotated Title 42. The Public Health and Welfare § 300ff-1. Prohibition on use of funds**

None of the funds made available under this Act, or an amendment made by this Act, shall be used to provide individuals with hypodermic needles or syringes so that such individuals may use illegal drugs.

**42 U.S.C. § 300ff-71 - U.S. Code - Unannotated Title 42. The Public Health and Welfare § 300ff-71. Grants for coordinated services and access to research for women, infants, children, and youth**

(a)In general

The Secretary, acting through the Administrator of the Health Resources and Services Administration, shall award grants to public and nonprofit private entities (including a health facility operated by or pursuant to a contract with the Indian Health Service) for the purpose of providing family-centered care involving outpatient or ambulatory care (directly or through contracts or memoranda of understanding) for women, infants, children, and youth with HIV/AIDS.

(b)Additional services for patients and families

Funds provided under grants awarded under subsection (a) may be used for the following support services:

(1) Family-centered care including case management.

(2) Referrals for additional services including--

(A) referrals for inpatient hospital services, treatment for substance abuse, and mental health services; and

(B) referrals for other social and support services, as appropriate.

(3) Additional services necessary to enable the patient and the family to participate in the program established by the applicant pursuant to such subsection including services designed to recruit and retain youth with HIV.

(4) The provision of information and education on opportunities to participate in HIV/AIDS-related clinical research.

(c)Coordination with other entities

A grant awarded under subsection (a) may be made only if the applicant provides an agreement that includes the following:

(1) The applicant will coordinate activities under the grant with other providers of health care services under this chapter, and under title V of the Social Security Act, including programs promoting the reduction and elimination of risk of HIV/AIDS for youth.

(2) The applicant will participate in the statewide coordinated statement of need under part B (where it has been initiated by the public health agency responsible for administering grants under part B) and in revisions of such statement.

(3) The applicant will every 2 years submit to the lead State agency under section 300ff-27(b)(4) of this title audits regarding funds expended in accordance with this subchapter and shall include necessary client-level data to complete unmet need calculations and Statewide coordinated statements of need process.

(d)Administration; application

A grant may only be awarded to an entity under subsection (a) if an application for the grant is submitted to the Secretary and the application is in such form, is made in such manner, and contains such agreements, assurances, and information as the Secretary determines to be necessary to carry out this section. Such application shall include the following:

(1) Information regarding how the expected expenditures of the grant are related to the planning process for localities funded under part A (including the planning process outlined in section 300ff-12 of this title) and for States funded under part B (including the planning process outlined in section 300ff-27(b) of this title).

(2) A specification of the expected expenditures and how those expenditures will improve overall patient outcomes, as outlined as part of

13

**42 U.S.C. § 300ff-121(a) - U.S. Code - Unannotated Title 42. The Public Health and Welfare § 300ff-121. Minority AIDS initiative**

(a)In general

For the purpose of carrying out activities under this section to evaluate and address the disproportionate impact of HIV/AIDS on, and the disparities in access, treatment, care, and outcomes for, racial and ethnic minorities (including African Americans, Alaska Natives, Latinos, American Indians, Asian Americans, Native Hawaiians, and Pacific Islanders), there are authorized to be appropriated $131,200,000 for fiscal year 2007, $135,100,000 for fiscal year 2008, $139,100,000 for fiscal year 2009, $146,055,000 for fiscal year 2010, $153,358,000 for fiscal year 2011, $161,026,000 for fiscal year 2012, and $169,077,000 for fiscal year 2013. The Secretary shall develop a formula for the awarding of grants under subsections (b)(1)(A) and (b)(1)(B) that ensures that funding is provided based on the distribution of populations disproportionately impacted by HIV/AIDS.

**42 U.S.C. § 300w-7 - U.S. Code - Unannotated Title 42. The Public Health and Welfare § 300w-7. Nondiscrimination provisions**

(a)Programs and activities receiving Federal financial assistance

(1) For the purpose of applying the prohibitions against discrimination on the basis of age under the Age Discrimination Act of 1975, on the basis of handicap under section 504 of the Rehabilitation Act of 1973, on the basis of sex under title IX of the Education Amendments of 1972, or on the basis of race, color, or national origin under title VI of the Civil Rights Act of 1964, programs and activities funded in whole or in part with funds made available under this part are considered to be programs and activities receiving Federal financial assistance.

(2) No person shall on the ground of sex or religion be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity funded in whole or in part with funds made available under this part.

(b)Failure to comply

Whenever the Secretary finds that a State, or an entity that has received a payment from an allotment to a State under section 300w-1 of this title, has failed to comply with a provision of law referred to in subsection (a)(1), with subsection (a)(2), or with an applicable regulation (including one prescribed to carry out subsection (a)(2)), the Secretary shall notify the chief executive officer of the State and shall request him to secure compliance. If within a reasonable period of time, not to exceed sixty days, the chief executive officer fails or refuses to secure compliance, the Secretary may--

(1) refer the matter to the Attorney General with a recommendation that an appropriate civil action be instituted,

(2) exercise the powers and functions provided by title VI of the Civil Rights Act of 1964, the Age Discrimination Act of 1975, or section 504 of the Rehabilitation Act of 1973, as may be applicable, or

(3) take such other action as may be provided by law.

(c)Civil actions by Attorney General

When a matter is referred to the Attorney General pursuant to subsection (b)(1), or whenever he has reason to believe that a State or an entity is engaged in a pattern or practice in violation of a provision of law referred to in subsection (a)(1) or in violation of subsection (a)(2), the Attorney General may bring a civil action in any appropriate district court of the United States for such relief as may be appropriate, including injunctive relief.

## 42 U.S.C. § 18116 - U.S. Code - Unannotated Title 42. The Public Health and Welfare § 18116. Nondiscrimination

(a)In general

Except as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or section 794 of Title 29, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments). The enforcement mechanisms provided for and available under such title VI, title IX, section 794, or such Age Discrimination Act shall apply for purposes of violations of this subsection.

(b)Continued application of laws

Nothing in this title (or an amendment made by this title) shall be construed to invalidate or limit the rights, remedies, procedures, or legal standards available to individuals aggrieved under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), section 794 of Title 29, or the Age Discrimination Act of 1975, or to supersede State laws that provide additional protections against discrimination on any basis described in subsection (a).

(c)Regulations

The Secretary may promulgate regulations to implement this section.

## Code of Federal Regulations Title 24. Housing and Urban Development § 574.603(b) Nondiscrimination and equal opportunity

Within the population eligible for this program, the nondiscrimination and equal opportunity requirements set forth in 24 CFR part 5 and the following requirements apply:

. . . .

(b) Affirmative outreach. A grantee or project sponsor must adopt procedures to ensure that all persons who qualify for the assistance, regardless of their race, color, religion, sex, age, national origin, familial status, or handicap, know of the availability of the HOPWA program, including facilities and services accessible to persons with a handicap, and maintain evidence of implementation of the procedures.