No. 25-4988

## IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

SAN FRANCISCO AIDS FOUNDATION, *et al.*,

Plaintiffs-Appellees,

v.

DONALD J. TRUMP, *et al.*,

Defendants-Appellants.

On Appeal from the United States District Court
for the Northern District of California

## SUPPLEMENTAL BRIEF FOR APPELLANTS

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
DANIEL TENNY
JACK STARCHER
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7515*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-8877*

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................1

ARGUMENT......................................................................................................2

I.     *Thakur v. Trump* Confirms That Plaintiffs' Facial First Amendment Challenges Are Foreclosed by *Finley*...................................2

II.    The Supreme Court's Decision in *West Virginia v. B.P.J.* Confirms that Plaintiffs' Equal Protection Claims Fail .........................6

CONCLUSION ................................................................................................10

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

**TABLE OF AUTHORITIES**

**Cases:**                                                          **Page(s)**

*Fonti v. City of Menlo Park*,
  146 F.3d 629 (9th Cir. 1998) ................................................................5

*Italian Colors Rest. v. Becerra*,
  878 F.3d 1165 (9th Cir. 2018) .......................................................... 5

*National Endowment for the Arts v. Finley*,
  524 U.S. 569 (1998) ............................................................... 1, 2-3, 3

*Project Veritas v. Schmidt*,
  125 F.4th 929 (9th Cir. 2025) ........................................................ 5

*Rust v. Sullivan*,
  500 U.S. 173 (1991) ............................................................................6

*Thakur v. Trump*,
  176 F.4th 1187 (9th Cir. 2026) .................................................... 2, 3

*United States v. Skrmetti*,
  605 U.S. 495 (2025) ............................................................ 1, 2, 7, 8, 9

*West Virginia v. B.P.J.*, 609 U.S. ___,
  No. 24-43, slip. op. (U.S. June 30, 2026) ....................................... 7

**Regulatory Materials:**

Exec. Order No. 14,151,
  *Ending Radical and Wasteful Government DEI Programs and
  Preferencing*,
  90 Fed. Reg. 8339 (Jan. 29, 2025)................................................... 3-4

Exec. Order No. 14,168,
  *Defending Women From Gender Ideology Extremism and
  Restoring Biological Truth to the Federal Government*,
  90 Fed. Reg. 8615 (Jan. 30, 2025).......................................................4

ii

## INTRODUCTION

On June 30, this Court ordered the parties to file supplemental briefs "addressing the effect of *Thakur v. Trump*, 176 F.4th 1187 (9th Cir. 2026) and *West Virginia v. B.P.J.*, 609 U.S. ___ (2026) on this case." As explained below, although it mistakenly applied a different standard to the as-applied challenge at issue in that case, this Court's decision in *Thakur* reaffirms that the Supreme Court's decision in *National Endowment for the Arts v. Finley*, 524 U.S. 569 (1998) controls for facial claims, and thereby forecloses plaintiffs' facial First Amendment claims against the challenged Executive Order provisions. For the reasons explained in the government's principal briefs, *Finley* allows the government to differentiate based on content or viewpoint when dispersing competitive, selective federal grant money.

The Supreme Court's decision in *West Virginia v. B.P.J.*, 609 U.S. ___ (2026), likewise confirms that the district court erred. Although the Supreme Court did not disturb this Court's precedents holding that government actions discriminating on the basis of transgender status are subject to intermediate scrutiny, it reaffirmed the Supreme Court's reasoning in *United States v. Skrmetti*, 605 U.S. 495 (2025). As explained in

the government's principal briefs, that reasoning precludes plaintiffs'

claims here. As in *Skrmetti*, the government action that plaintiffs challenge

does not discriminate based on transgender status because there is "a 'lack

of identity' between transgender status" and the group of individuals

excluded by the government's action. 605 U.S. at 519.

The United States intends to file a petition for certiorari in *Thakur*. If

the Supreme Court were to grant certiorari and reverse in that case, it

would follow *a fortiori* that the district court erred in this case. This Court

may therefore wish to maintain the abeyance in this case until the

disposition of the government's forthcoming petition for certiorari. If the

Court resolves this appeal now, the district court's judgment should be

reversed.

### ARGUMENT

**I.**     *Thakur v. Trump* **Confirms That Plaintiffs' Facial First Amendment Challenges Are Foreclosed by** *Finley***.**

A.     In *Thakur v. Trump*, 176 F.4th 1187 (9th Cir. 2026), this Court

confronted an as-applied challenge arguing that particular funding

decisions were terminated based on viewpoint. In upholding a decision

enjoining those particular grant terminations, the Court concluded that the

Supreme Court's decision in *National Endowment for the Arts v. Finley*, 524 U.S. 569 (1998), did not control in the context of an as-applied challenge where a plaintiff claims "discrimination in a[] particular funding decision." *Thakur*, 176 F.4th at 1202 (quoting *Finley*, 524 U.S. at 586). In so holding, however, the Court repeatedly recognized that *Finley* is controlling in the context of "a facial challenge to a program that by its design excludes categories of activities or speakers." 176 F.4th at 1203; *see also id.* (explaining that *Finley* held that funding standards that differentiate based on viewpoint "did not necessarily — as a matter of facial unconstitutionality — constitute viewpoint discrimination"); *id.* at 1202 (noting that the Supreme Court in *Finley* addressed a facial challenge and "ha[d] no occasion ... to address an as-applied challenge" (alterations in original)).

 *Thakur*'s recognition that *Finley* controls in the context of a facial First Amendment challenge to government funding decisions that "exclude[] categories of activities or speakers," 176 F.4th at 1203, is fatal to plaintiffs' First Amendment claims here. The challenged provisions here, just like the challenged provision in *Finley*, contain broad pronouncements about how agencies should prioritize federal funding by defining "categories of

3

activities" that should not receive federal funding. *See* Exec. Order No. 14,151, § 2(b)(i), *Ending Radical and Wasteful Government DEI Programs and Preferencing*, 90 Fed. Reg. 8339, 8339 (Jan. 29, 2025) (directing "[e]ach agency, department, or commission head" to "terminate, to the maximum extent allowed by law, ... 'equity-related' grants or contracts"); Exec. Order No. 14,168, §§ 3(e), (g), *Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, 90 Fed. Reg. 8615, 8615 (Jan. 30, 2025) (directing agencies to "take all necessary steps, as permitted by law, to end the Federal funding of gender ideology" and "ensure grant funds do not promote gender ideology"). And just as in *Finley*, plaintiffs here sought—and obtained—a broad injunction against the challenged provisions themselves, not any particular application of those provisions

Both the district court's preliminary injunction opinion and order in this case make clear that it granted relief to plaintiffs based only on a facial First Amendment theory. In its opinion, the district court explained that its preliminary injunction was based on a *facial* First Amendment challenge, holding that plaintiffs had made out a "likelihood of success on a facial

4

First Amendment challenge" because of the "censorious purpose" and "broad application" of the challenged provisions.  ER-39.

Similarly, the preliminary injunction order itself does not enjoin the challenged provisions as applied to any particular funding decision; it enjoins the challenged provisions in their entirety and prevents defendants from enforcing those provisions against plaintiffs *at all*.  *See* ER-5-6 (enjoining the challenged provisions in their entirety and ordering reinstatement of *any* terminated contract or grant award held by plaintiffs). The district court could only have issued that kind of broad, injunctive relief—unmoored from any "particular speech activity"—pursuant to a facial First Amendment theory.  *Project Veritas v. Schmidt*, 125 F.4th 929, 939-40 (9th Cir. 2025) (explaining difference between facial and as-applied challenge); *see also Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1175 (9th Cir. 2018) ("While '[a] successful challenge to the facial constitutionality of a law invalidates the law itself,' a successful as-applied challenge invalidates 'only the particular application of the law.'" (quoting *Fonti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998)).

*Thakur* thus confirms that *Finley* is controlling here.  For all the reasons given in in the government's principal briefs, Br. 29-36, Reply Br. 8-

5

15, the district court therefore erred in concluding that plaintiffs were likely to succeed on their facial First Amendment challenge. *Finley* establishes that selective government funding that leaves private entities free to express themselves as they wish using their own resources does not raise constitutional concerns. As the Supreme Court explained in *Finley*, "cho[osing] to fund one activity to the exclusion of the other" is permissible. 524 U.S. at 588 (quoting Rust v. Sullivan, 500 U.S. 173, 174 (1991)).

B.    For the reasons given, *Thakur* only confirms that the preliminary injunction here should be vacated for the reasons given in the government's principal briefs. But the Court might also consider continuing to hold this case in abeyance pending the government's forthcoming petition for certiorari asking the Supreme Court to review and correct this Court's decision in *Thakur*. If the Supreme Court were to grant

6

certiorari and reverse in that case, it would follow *a fortiori* that the district court erred in this case.

## II. The Supreme Court's Decision in *West Virginia v. B.P.J.* Confirms that Plaintiffs' Equal Protection Claims Fail.

In *West Virginia v. B.P.J.*, which was decided together with *Little v. Hecox*, the Supreme Court held that schools violate neither Title IX nor the Equal Protection Clause when they determine eligibility for female sports based on biological sex. In analyzing the equal-protection question, the Court's did not overturn this Court's precedent holding that classifications based on transgender status or gender identity trigger intermediate scrutiny. *West Virginia v. B.P.J.*, No. 24-43, slip op. 23 (U.S. June 30, 2025) (*B.P.J.* slip op.). Instead, the Court held that it "need not definitively resolve whether rational basis review or intermediate scrutiny applies to transgender classifications" because the classifications at issue were constitutional in any event. *Id.*

This case can be resolved in the same way. Even accepting this Court's precedent that intermediate scrutiny applies to transgender classifications, the classifications at issue here are constitutional. In rejecting the plaintiffs' equal protection arguments, *B.P.J.* reiterated that the

7

Court's decision in *United States v. Skrmetti*, 605 U.S. 495 (2025), provides the proper framework for assessing whether government action "classif[ies] based on gender identity or transgender status" in the first place. *B.P.J.* slip op 23. As explained in the government's principal briefs, the district court's conclusion that the challenged gender-ideology provisions classify based on transgender status cannot be squared with *Skrmetti*. Br. 49-51, Reply Br. 23-24.

Under *Skrmetti*, a court must first identify the groups created by the challenged government action and determine whether the government has "exclude[d] any individual … because of the individual's" protected characteristic. 605 U.S. at 518. Here, even accepting the district court's assertion that the challenged provision would require agencies to strip funding for programs that provide services to people exclusively based on their gender identity (rather than their sex), the two groups created by the challenged provision are not groups of individuals sorted by their sex or gender identity but rather groups of programs that promote gender ideology and groups of programs that do not.

For starters, differentiating between categories of government funded programs does not treat any *individual* differently based on any

8

characteristic—protected or otherwise. For the reasons explained in the government's principal briefs, Br. 47-53, Reply Br. 21-25, the gender-ideology provisions do not define what programs the government will continue to fund exclusively (or even partially) based on transgender status or sex. Instead, the provisions define the government's funding goals based on whether programs seek to replace the clear binary of sex with the inherently malleable and self-assessed concept of gender identity.

But even looking at the two groups created by the challenged provision from the perspective of individuals who receive benefits from funded programs, plaintiffs' theory still fails. There is no question that transgender people can continue to access federally funded programs under the challenged provision. Thus, the challenged provision "does not exclude any individual" from access to government-funded programming "on the basis of their transgender status." *Skrmetti*, 605 U.S. at 518. In other words, looking at the two groups created by the order, transgender people "f[all] into both groups." *Id.* That is fatal to the district court's

9

conclusion that the challenged provision is subject to heightened scrutiny because it discriminates based on transgender status.

## CONCLUSION

For the foregoing reasons and those given in the government's principal briefs, the district court's preliminary injunction should be vacated. Alternatively, the Court may wish to continue to hold this case pending the government's forthcoming petition for certiorari in *Thakur*.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
DANIEL TENNY
*/s Jack Starcher*
JACK STARCHER
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7515*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-8877*

July 2026

10

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) and the Court's June 30 order because it contains 1709 words over 10 double-spaced pages. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Book Antiqua 14-point font, a proportionally spaced typeface.

*s/ Jack Starcher*

Jack Starcher

# CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*s/ Jack Starcher*
Jack Starcher