**Case No. 25-4988**

---

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE NINTH CIRCUIT

_____

SAN FRANCISCO AIDS FOUNDATION, et al.,

Plaintiffs-Appellees,

*v.*

DONALD J. TRUMP, et al.,

Defendants-Appellants.

_____

On Appeal from the United States District Court
for the Northern District of California

_____

### SUPPLEMENTAL BRIEF OF THE PLAINTIFFS-APPELLEES
### SAN FRANCISCO AIDS FOUNDATION, et al.

_____

Camilla B. Taylor
Kenneth D. Upton, Jr.
**Lambda Legal Defense and
Education Fund, Inc.**
3656 North Halsted Street
Chicago, Illinois 60613-5974
312-663-4413

Jennifer C. Pizer
**Lambda Legal Defense and
Education Fund, Inc.**
800 South Figueroa Street, Ste. 1260
Los Angeles, California 90017-2521
213-382-7600

Jose Abrigo
Omar Gonzalez-Pagan
**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, New York 10005-3919
212-809-8585

Karen L. Loewy
**Lambda Legal Defense and
Education Fund, Inc.**
815 16th Street NW, Suite 4140
Washington, DC 20006-4101
202-804-6245

*Counsel for Plaintiffs-Appellees*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...........................................................................................1

   A.  Procedural History .........................................................................2

   B.  Summary of *Thakur v. Trump*. ....................................................4

   C.  Summary of *West Virginia v B.P.J.* ............................................6

ARGUMENT ................................................................................................8

I.     *THAKUR* CONFIRMS THAT PLAINTIFFS' CLAIMS BELONG IN DISTRICT COURT BECAUSE THEY CHALLENGE UNLAWFUL GOVERNMENT POLICY. .......................................................................8

   A.  The Tucker Act Applies Only When A Claim Is, at Its Essence, Contractual ......................................................................................9

   B.  Ninth Circuit Precedent Independently Supports District Court Jurisdiction...............................................................................11

   C.  *Thakur*'s First Amendment Discussion Confirms Plaintiffs Present a Valid Constitutional Claim .................................................13

II.    *B.P.J.* DOES NOT UNDERMINE PLAINTIFFS' CLAIMS BUT RATHER REAFFIRMS THAT THE GENDER ORDER IS SUBJECT TO HEIGHTENED SCRUTINY....................................................................16

   A.  The Ninth Circuit's Intermediate Scrutiny of Classifications Based on Transgender Status Remains the Law .................................16

   B.  *B.P.J.* Confirms That The Gender Order Classifies Based on Sex And Is Therefore Subject to Heightened Scrutiny........................18

   C.  *B.P.J.* Is Cabined to the Sports Context, Which Is Irrelevant Here ....19

CONCLUSION ...........................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

*Am. Acad. of Pediatrics v. U.S. Dep't of Health & Hum. Servs.*,
   816 F. Supp. 3d 27 (D.D.C. 2026)..................................................................10

*Am. Ass'n of Physics Tchrs., Inc. v. Nat'l Sci. Found.*,
   804 F. Supp. 3d 45 (D.D.C. 2025).....................................................................8

*Am. Ass'n of Univ. Profs. v. Trump*,
   815 F. Supp. 3d 907 (N.D. Cal. 2025), ...........................................................10

*Am. Council of Learned Soc'ys  v. Nat'l Endowment for the
   Humanities*,
   Nos. 25-cv-3657 (CM), 25-cv-3923 (CM), 2026 WL 1256545
   (S.D.N.Y. May 7, 2026)..............................................................................10, 15

*B.P.J. v. West Virginia State Bd. of Educ.*,
   98 F.4th 542 (4th Cir. 2024),...........................................................................16

*Bd. of Educ. of City Sch. Dist. of City of N.Y. v. United States Dep't
   of Educ.*,
   No. 25-cv-8547 (AS), 2026 WL 948205 (S.D.N.Y. Apr. 8, 2026),..................10

*Brighton Park Neighborhood Council v. McMahon, Sec'y of Educ.*,
   No. 25-4523 (SLS), 2026 WL 1707623 (D.D.C. June 12, 2026).....................11

*California v. Dep't of Educ.*,
   No. 25-CV-10548-AK, 2025 WL 3165713 (D. Mass. Nov. 13,
   2025) .................................................................................................................11

*Chiles v. Salazar*,
   146 S. Ct. 1010 (2026)......................................................................................13

*City & Cnty. of San Francisco v. U.S. Dep't of Just.*,
   822 F. Supp. 3d 1056 (N.D. Cal. 2026) ...........................................................11

*City of Chicago v. Noem*,
   No. 25 CV 12765, 2025 WL 3251222 (N.D. Ill. Nov. 21, 2025)....................11

ii

*Cnty. of Santa Clara v. Noem*,
   815 F. Supp. 3d 979 (N.D. Cal. 2025) ...........................................................11

*Cmty. Legal Servs. In E. Palo Alto v. Dep't of Health & Hum. Servs.*,
   155 F.4th 1099 (9th Cir. 2025)......................................................................12

*Council for Opportunity in Educ. v. Dep't of Educ.*,
   Nos. 25-cv-03491 (TSC), 25-cv-03514 (TSC), 2026 WL 120984
   (D. D.C. Jan. 16, 2026) ..................................................................................11

*Dep't of Educ. v. California*,
   604 U.S. 650 (2025) (per curiam) .................................................................10

*Dugan v. Rank*,
   372 U.S. 609 (1963)..........................................................................................8

*Hecox v. Little*,
   104 F.4th 1061 (9th Cir. 2024),.........................................................16, 18, 19

*Hous. Auth. of City & Cnty. of San Francisco v. Turner*,
   No. 25-cv-08859-JST, 2025 WL 3187761 (N.D. Cal. Nov. 14,
   2025), ............................................................................................................11

*Inst. for Applied Ecology v. Burgum*,
   No. 6:25-cv-02364-MC, 2026 WL 1470638 (D. Or. Mar. 12,
   2026), ............................................................................................................11

*Karnoski v. Trump*,
   926 F.3d 1180 (9th Cir. 2019)................................................................16, 17

*Larson v. Domestic & Foreign Com. Corp.*,
   337 U.S. 682 (1949).........................................................................................8

*Legal Servs. Corp. v. Velazquez*,
   531 U.S. 533 (2001)..................................................................................14, 15

*Nat'l Endowment for the Arts v. Finley*,
   524 U.S. 569 (1998)..................................................................................13, 15

iii

*Nat'l Rifle Ass'n of Am. v. Vullo*,
  602 U.S. 175 (2024)........................................................................13

*Nat'l Insts. of Health v. Am. Public Health Ass'n*,
  145 S. Ct. 2658 (2025)....................................................................10

*Pacito v. Trump*,
  169 F.4th 895 (9th Cir. 2026)..........................................................12

*Planned Parenthood of Greater N.Y. v. U.S. Dep't of Health & Hum.
  Servs.*,
  No. 25-2453, 2025 WL 2840318 (D.D.C. Oct. 7, 2025).................11

*Rhode Island Coal. Against Domestic Violence v. Kennedy*,
  812 F. Supp. 3d 180 (D. R.I. 2025),.................................................11

*Rosenberger v. Rector & Visitors of the Univ. of Va.*,
  515 U.S. 819, 829 (1995),................................................................13

*Rust v. Sullivan*,
  500 U.S. 173, 193-95 (1991) ...........................................................15

*Thakur v. Trump*,
  176 F.4th 1187 (9th Cir. 2026)..................................................*passim*

*Trump v. Cook*,
  No. 25A312, 2026 WL 1855613 (U.S. 2026) ....................................8

*West Virginia v. B.P.J.*,
  609 U.S. ___, 2026 WL 1868739 (2026) ....................................*passim*

**Federal Statutes**

The Tucker Act, 28 U.S.C. § 1491(a)..........................................*passim*

Administrative Procedure Act ....................................................*passim*

v

Press Release, The White House, Supreme Court Bolsters
President Trump's Push to Eliminate Transgender Insanity
(June 30, 2026),
https://www.whitehouse.gov/releases/2026/06/supreme-
court-bolsters-president-trumps-push-to-eliminate-
transgender-insanity/ ..................................................................................17

## INTRODUCTION[1]

Plaintiffs-Appellees, a group of nonprofit organizations that receive federal funding to support their work providing services to members of the LGBTQ communities, submit this supplemental briefing, pursuant to this Court's June 30, 2026 Order (Doc. 51), to address the effect of *Thakur v. Trump*, 176 F.4th 1187 (9th Cir. 2026), and *West Virginia v. B.P.J.*, 609 U.S. ___ (2026), on this case.

The Ninth Circuit's decision in *Thakur* confirms the district court's jurisdiction and supports affirmance of the properly issued preliminary injunction forbidding the government from withholding or eliminating the Plaintiffs' funding based on the Plaintiffs' viewpoint. And the Supreme Court's decision in *B.P.J.* is a narrowly circumscribed case that does not change the level of scrutiny applied to equal protection claims based on transgender status or sex. Additionally, because the case is confined to the sports context, it is inapplicable here.

---

[1] Capitalized terms used but not defined in this Brief have the same meanings given them in Plaintiffs-Appellees' Answering Brief, Doc. 23.1.

### A.    Procedural History

In early 2025, the President issued a series of Executive Orders, including the Gender Order, the DEI-1 Order, and the DEI-2 Order (collectively, the "Challenged Orders").  The Gender Order expresses a disparaging and unscientific view of transgender people by deeming their identities "false" and seeks to coerce federal funding recipients to adopt the same viewpoint or lose their funding.  It expressly refers to transgender status by defining gender ideology as the recognition that a person may have a gender identity that differs from their birth sex.  Gender Order § 2(f).  The DEI-1 Order asserts that "diversity, equity, inclusion, and accessibility" are "illegal and immoral discrimination programs" and directs federal agencies to terminate all "equity-related" grants.  And the DEI-2 Order targets private actors and outlines specific mechanisms to punish federal contractors and grantees who embrace, promote, or necessarily rely on the principles of diversity, equity, inclusion, and accessibility.[2]

Plaintiffs filed their Complaint on February 20, 2025, and challenged, among others, three provisions of the Challenged Orders for violating

---

[2] A full description of the Challenged Orders is outlined in the Appellee's Answering Brief, Doc. 23.1 at 4–6.

several aspects of the United States Constitution. On March 3, 2025, Plaintiffs filed their Motion for Preliminary Injunction, seeking to enjoin the provisions of the Challenged Orders that terminated Plaintiffs' federal grant funding (the "Funding Provisions"). After an evidentiary hearing, the district court granted in part Plaintiffs' Motion and enjoined the Defendants from enforcing the Funding Provisions against Plaintiffs and directed that Defendants reinstate "any terminated contract or grant awards of Plaintiffs (whether a Plaintiff is a grantee or sub grantee) in accordance with the grant terms and conditions in place at the time the Complaint was filed." ER 5-6.

The Government appealed, and briefing concluded on December 17, 2025. Argument was scheduled before this Court for February 10, 2026. On February 6, 2026, this Court issued an order holding the appeal in abeyance pending its decision in *Thakur v. Trump*, and the Supreme Court's decision in *Idaho v. Hecox*. Doc. 44.

On May 27, 2026, the Ninth Circuit issued its decision and opinion in *Thakur*. The parties filed a joint status report on June 8, 2026. On June 30, 2026, the United States Supreme Court decided *West Virginia v. B.P.J.*, 609 U.S. ___, 2026 WL 1868739 (2026). The Supreme Court consolidated *Hecox* with *B.P.J.*, and issued a single opinion under the *B.P.J.* caption. *See* 609 U.S.

3

at \_\_\_, 2026 WL 1868739, at *9.  On June 30, 2026, this Court ordered the parties to file supplemental briefs addressing the effects of the two cases. Doc. 51.1.

### B.    Summary of *Thakur v. Trump*

Relevant to this case, *Thakur* challenged, *inter alia*, as unconstitutional the termination of grants *en masse* by President Trump and the Defendant Agencies acting at his behest, not based on specific grant directives, but because of the executive's disfavor of the perceived viewpoints expressed by grant recipients.  The plaintiffs in *Thakur* are six researchers in California who applied for and received multi-year research grants from the Environmental Protection Agency ("EPA"), the National Science Foundation ("NSF"), and the National Endowment for the Humanities ("NEH").  176 F.4th at 1193–94.  In April 2025, those agencies sent form letters purporting to terminate plaintiffs' grant awards based on the implementation of several Executive Orders.  *Id.* at 1194.  Plaintiffs initiated a class action on behalf of similarly situated researchers whose federally funded grants had been or imminently would be terminated or suspended. Plaintiffs alleged violations of free speech, due process, separation of powers principles, and the Administrative Procedure Act ("APA").  *Id.* at 1195.  The

4

district court granted a preliminary injunction and provisionally certified two classes: (1) those whose grants were terminated without any grant-specific explanation (the "Form Termination Class"); and (2) those whose grants were terminated because of the DEI Executive Orders (the "DEI Termination Class"). *Id.* The district court concluded that the Form Termination Class was likely to succeed because the terminations were arbitrary and capricious under the APA, and the DEI Termination Class was likely to succeed because the terminations violated the First Amendment and were contrary to the agencies' congressionally mandated directives. *Id.*

On appeal, the Government argued that the Form Termination Class was not likely to succeed on the merits because the district court did not have jurisdiction over the plaintiffs' APA claims. The Ninth Circuit agreed, concluding that the Tucker Act, 28 U.S.C. § 1491(a)(1), likely requires that the plaintiffs' APA claims regarding terminated grants must be brought in the Court of Federal Claims. *Thakur*, 176 F.4th at 1198–99.

The Government also argued that the DEI Termination Class was not likely to succeed on the merits because its First Amendment claims failed. *Id.* at 1199. The Ninth Circuit disagreed and affirmed that portion of the preliminary injunction. *Id.* at 1200–01. The court concluded that in the

5

provision of subsidies, the government may not engage in viewpoint discrimination by aiming at the suppression of dangerous ideas. *Id.* at 1200 (citing *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 587 (1998)) (cleaned up). The court also agreed that the government is not merely exercising its power to choose the programs it funds but has instead terminated individual grants in existing programs based on the perceived viewpoints of individual speakers. *Id.* Doing so violates the First Amendment. The government's targeted discrimination meant that the challenge was as-applied to the entities' particular grants and speech.

Because the First Amendment supported affirmance, the court did not address the other claims pertaining to the DEI Termination Class.

### C. Summary of *West Virginia v. B.P.J.*

In *B.P.J.*, the Supreme Court took up the narrow question of whether, under Title IX and the Equal Protection Clause of the Fourteenth Amendment, schools may maintain women's and girls' sports for birth-assigned females and thereby exclude transgender women and girls from those teams. 2026 WL 1868739, at *6. The Court reviewed two state laws—one from West Virginia and the other from Idaho—that ban transgender girls from competing on women's and girls' sports teams. *Id.* Only the

6

petitioners in the *West Virginia* case raised a Title IX argument. *Id.* The petitioners in both cases raised an Equal Protection violation. *Id.* at *10.

The Court first concluded that the text of Title IX, as amended by the Javits Amendment, permits schools to maintain women's and girls' sports teams for birth-assigned females and thereby ban transgender women and girls from such teams. *Id.* at *7.

On the constitutional challenges, the Court concluded that the states' laws did not violate the Equal Protection clause by maintaining sports teams that exclude transgender girls. *Id.* at *10–*11. Importantly, the Court found that such laws classify by sex. The challenged laws were therefore subject to intermediate scrutiny, meaning that they are permissible only when the classification is substantially related to achieving an important government objective. *Id.* at *12. The Court concluded that in the "distinctive sports context," given the inherent physical differences between men and women generally, and sports-specific concerns about physical safety and competitive fairness on teams for women and girls, states may exclude athletes assigned male at birth from those teams. *Id.* Based on the unique interests at play in the sports context, the Court held that the states had met their burden to uphold their laws. *Id.* at *14.

Importantly, the Court expressly declined to decide the level of scrutiny that applies to discrimination on the basis of transgender status, leaving existing circuit precedents, including this Court's precedent, untouched. *Id.*

## ARGUMENT

### I. *THAKUR* CONFIRMS THAT PLAINTIFFS' CLAIMS BELONG IN DISTRICT COURT BECAUSE THEY CHALLENGE UNLAWFUL GOVERNMENT POLICY.

Because Plaintiffs here allege constitutional violations and seek declaratory and injunctive relief, their claims belonged in the district court.

Plaintiffs do not assert claims under the APA, which waives sovereign immunity only to the extent that no other statute "expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. Rather, Plaintiffs assert constitutional claims. "Plaintiffs do not need a waiver of sovereign immunity to bring claims against executive officers acting outside the bounds of the Constitution or their statutory authority." *Am. Ass'n of Physics Tchrs., Inc. v. Nat'l Sci. Found.*, 804 F. Supp. 3d 45, 66 (D.D.C. 2025) (citing *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949); *Dugan v. Rank*, 372 U.S. 609, 621–22 (1963)); *see also Trump v. Cook*, 609 U.S. \_\_\_, No. 25A312, 2026 WL 1855613, at *11 n.2 (U.S. June 29, 2026) ("We have often

8

held that plaintiffs may sue in equity without a congressionally-provided cause of action to prevent an injurious act by a public officer." (cleaned up)).

### A. The Tucker Act Applies Only When A Claim Is, at Its Essence, Contractual.

In any event, *Thakur* confirms that Plaintiffs' constitutional claims are not subject to the Tucker Act's exclusive jurisdiction. The Tucker Act provides for exclusive jurisdiction in the Court of Federal Claims for actions seeking monetary relief based upon "any express or implied contract with the United States," in excess of $10,000. *See* 28 U.S.C. § 1491(a). To determine whether an action is contractual in nature and subject to the Tucker Act, this Court examines the source of the rights upon which plaintiffs base their claims and the type of relief sought. *Thakur*, 176 F.4th at 1198 (citation and quotation omitted). Both factors point in favor of district court jurisdiction: like the plaintiffs in *Thakur's* DEI Termination Class, Plaintiffs here allege constitutional violations and seek solely declaratory and injunctive relief. Plaintiffs' claims therefore belong in the district court.

The Government has advanced a theory across the country that any suit seeking to enjoin the termination of funding because of Executive Orders or agency actions are causes of action that belong in the Court of

9

Federal Claims and consistently relies on *Department of Education v. California*, 604 U.S. 650 (2025) (per curiam), and *NIH v. American Public Health Association*, 145 S. Ct. 2658 (Mem.) (2025) ("*APHA*"). But both those cases involved claims under the APA—this case does not. Indeed, the court in *Thakur* recognized that while the district court likely lacked jurisdiction over the Form Termination Class's APA claim, the plaintiffs' claims under the First Amendment were squarely within the district court's jurisdiction. *See Thakur*, 176 F.4th at 1198. So are Plaintiffs' here.

*Thakur* is the most recent statement in a long line of cases interpreting *Department of Education* and *APHA* which conclude that claims for injunctive relief based on constitutional or equitable grounds do not trigger the Tucker Act's exclusive jurisdiction.[3]

---

[3] *See Am. Ass'n of Univ. Profs. v. Trump*, 815 F. Supp. 3d 907 (N.D. Cal. 2025), *appeal dismissed*, No. 26-263, 2026 WL 1049175 (9th Cir. Feb. 11, 2026); *Am. Acad. of Pediatrics v. U.S. Dep't of Health & Hum. Servs.*, 816 F. Supp. 3d 27 (D.D.C. 2026); *Am. Council of Learned Soc'ys v. Nat'l Endowment for the Humanities*, Nos. 25-cv-3657 (CM), 25-cv-3923 (CM), 2026 WL 1256545 (S.D.N.Y. May 7, 2026), *appeal filed*, No. 26-1829 (2d Cir.); *Bd. of Educ. of City Sch. Dist. of City of N.Y. v. United States Dep't of Educ.*, No. 25-cv-8547 (AS), 2026 WL 948205 (S.D.N.Y. Apr. 8, 2026), *appeal filed*, No. 26-1602 (2d Cir.); *Brighton Park Neighborhood Council v. McMahon, Sec'y of Educ.*, No. 25-4523 (SLS), 2026 WL 1707623 (D.D.C. June 12, 2026); *California v. Dep't of Educ.*, No. 25-CV-10548-AK, 2025 WL 3165713 (D. Mass. Nov. 13, 2025); *City & Cnty. of San Francisco v. United States Dep't of Just.*, 822 F. Supp. 3d 1056 (N.D.

Under *Thakur's* rationale, the claims asserted here are not "at [their] essence" contract claims because both the source of the rights claimed and the remedies sought are not contractually based. *Id.* (citation omitted). Plaintiffs' claims—arising under the First and Fifth Amendments, the Spending Clause, and the Separation of Powers—therefore are not "contractual in nature" and do not implicate the Tucker Act's jurisdictional provision. The district court properly concluded that it had jurisdiction to hear this dispute.

## B. Ninth Circuit Precedent Independently Supports District Court Jurisdiction.

*Thakur's* jurisdictional analysis is aligned with this Court's other precedents establishing that the district court properly retained jurisdiction

---

Cal. 2026); *City of Chicago v. Noem*, No. 25 CV 12765, 2025 WL 3251222 (N.D. Ill. Nov. 21, 2025); *Cnty. of Santa Clara v. Noem*, 815 F. Supp. 3d 979 (N.D. Cal. 2025), *appeal filed*, No. 26-402 (9th Cir.); *Council for Opportunity in Educ. v. Dep't of Educ.*, Nos. 25-cv-03491 (TSC), 25-cv-03514 (TSC), 2026 WL 120984 (D.D.C. Jan. 16, 2026); *Hous. Auth. of City & Cnty. of San Francisco v. Turner*, No. 25-cv-08859-JST, 2025 WL 3187761 (N.D. Cal. Nov. 14, 2025), *appeal filed*, No. 26-233 (9th Cir.); *Inst. for Applied Ecology v. Burgum*, No. 6:25-cv-02364-MC, 2026 WL 1470638 (D. Or. Mar. 12, 2026), *appeal dismissed*, No. 26-3011 (9th Cir.); *Planned Parenthood of Greater New York v. U.S. Dep't of Health & Hum. Servs.*, No. 25-2453, 2025 WL 2840318 (D.D.C. Oct. 7, 2025); *Rhode Island Coal. Against Domestic Violence v. Kennedy*, 812 F. Supp. 3d 180 (D. R.I. 2025), *appeal dismissed*, No. 25-2229, 2026 WL 926474 (1st Cir. Jan. 5, 2026).

here. The noncontractual source of the asserted right is dispositive to the Tucker Act inquiry. *Cmty. Legal Servs. In E. Palo Alto v. Dep't of Health & Hum. Servs.*, 155 F.4th 1099, 1104 (Mem.) (9th Cir. 2025) (statement of Fletcher, Koh, JJ., respecting the denial of rehearing en banc). That the government may comply with a statutory obligation through contracts does not convert a suit into a contract action. *See id.* This is especially true for any party which lacks a direct contractual relationship with the government, including prospective applications or pass-through funding mechanisms. *Id.* The same was true in *Pacito v. Trump*, 169 F.4th 895 (9th Cir. 2026), where plaintiffs sought to enjoin the enforcement of certain executive orders. That the plaintiffs' relationship with the government was contractual did not transform their request for injunctive relief into a contract action. *Id.* at 926–28. Therefore, in addition to *Thakur*'s most recent statement regarding the Tucker Act's application, the Ninth Circuit has consistently held that claims such as those asserted by Plaintiffs here—seeking injunctive and declaratory relief for constitutional challenges—fall outside the Tucker Act's exclusive jurisdiction provision, even if the plaintiffs receive money from the government under a grant or funding agreement.

12

### C. *Thakur*'s First Amendment Discussion Confirms Plaintiffs Present a Valid Constitutional Claim.

Turning to the merits of Plaintiffs' First Amendment claims, *Thakur*'s analysis could not be more on point. *Thakur* determined that the government sought to terminate grants through a coordinated sequence of Executive Orders, including the same three orders challenged here (the Gender, DEI-1, and DEI-2 Orders). This Court recognized that the Supreme Court's opinion in *Finley*, 524 U.S. at 587, does not give the government carte blanche to select funding recipients based on the recipients' viewpoint and then selectively disfavor those groups because of their viewpoint rather than based on the subject matter of the program. *Thakur*, 176 F.4th at 1201 (citing *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995)).

The controlling First Amendment rule in the Ninth Circuit is straightforward: the government may not use its power to "punish or suppress disfavored expression." *Thakur*, 176 F.4th at 1199 (quoting *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 188 (2024)).[4] The *Thakur* court held

---

[4] The Supreme Court recently reaffirmed this most fundamental rule in *Chiles v. Salazar*, where it noted that the First Amendment does not permit the government "to enforce orthodoxy in thought or speech in this country." 146 S. Ct. 1010, 1029 (2026).

that the First Amendment principles applied with special force to DEI Executive Orders because they are "inherently directional" viewpoints, not neutral topics. *Thakur*, 176 F.4th at 1201.

As the court observed, the government "ha[d] not argued that the grant programs at issue use 'private speakers to transmit specific information pertaining to its own program,' nor that the grant programs enable the government 'to promote its own policies or to advance a particular idea[.]'" *Thakur*, 176 F.4th at 1200 n.5 (citation modified). The principle is equally applicable here: "Where private speech is involved, even Congress' antecedent funding decision cannot be aimed at the suppression of ideas thought inimical to the Government's own interest." *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 548–49 (2001).

*Thakur* also concluded that the defendants terminated grants based on "viewpoint" where they used search words and phrases that are well understood as normative rather than merely descriptive. Noting that "the government does not dispute that the agencies terminated the grants at issue because of the recipients' perceived expression of DEI [and DEIA] . . . viewpoint[s]," the court explained that "the terms DEI [and] DEIA . . . are inherently directional; they reflect 'perspective[s],' rather than neutral

14

topics," and "convey the viewpoint that the exclusion of historically disadvantaged groups is undesirable." *Thakur*, 176 F.4th at 1201 (emphasis added); *see also Am. Council of Learned Soc'ys*, 2026 WL 1256545, at *44 (finding that DEI is a "viewpoint").

Finally, with respect to all of the Executive Orders, *Thakur* rejected the Government's argument that the government is entitled to cease funding programs it no longer believes are in the public interest. The panel pointed to the "critical distinction between creating or ceasing a particular program (or subsidy, or forum), on the one hand, and discriminating against disfavored speaker viewpoints within a program (or subsidy, or forum) on the other." *Thakur*, 176 F.4th at 1202. The government may impose restrictions on subsidies "to define the limits and purposes of that program, [b]ut it cannot leverage its power to award subsidies into a penalty on disfavored viewpoints." *Id.* (citation modified) (citing *Velazquez*, 531 U.S. at 542; *Rust v. Sullivan*, 500 U.S. 173, 193–95 (1991); *Finley*, 524 U.S. at 587). *Thakur* forecloses Defendants from arguing that the Executive Branch has unlimited discretion to cut off grants after they have been awarded.

15

**II.** **_B.P.J._ DOES NOT UNDERMINE PLAINTIFFS' CLAIMS BUT RATHER REAFFIRMS THAT THE GENDER ORDER IS SUBJECT TO HEIGHTENED SCRUTINY.**

**A.** **The Ninth Circuit's Intermediate Scrutiny of Classifications Based on Transgender Status Remains the Law.**

_B.P.J._ and _Hecox_ originated from circuits that observed heightened or intermediate scrutiny for analyzing discrimination targeting transgender people. _See B.P.J. v. West Virginia State Bd. of Educ._, 98 F.4th 542, 556 (4th Cir. 2024), _reversed_, 609 U.S. ____ (2026); _Hecox v. Little_, 104 F.4th 1061, 1074 (9th Cir. 2024), _reversed_, 609 U.S. ____ (2026). The Supreme Court's decision in _B.P.J._ did not affect existing circuit precedent establishing heightened equal protection scrutiny for classifications that target transgender people. Indeed, the Court declined to take up this question. _See B.P.J._, 2026 WL 1868739, at *14 ("In these cases, we need not definitively resolve whether rational basis review or intermediate scrutiny applies to transgender classifications."). The Ninth Circuit's holding that heightened scrutiny applies to laws that discriminate on the basis of a person's status as transgender, _Karnoski v. Trump_, 926 F.3d 1180, 1201 (9th Cir. 2019), therefore still controls the equal protection analysis in this case. In _Karnoski_, this Court concluded that an Executive Order banning transgender individuals from serving in the military did not classify on the basis of "gender dysphoria" or

16

"gender transition," but rather "regulate[d] on the basis of transgender status," because it targeted transgender people as persons, and therefore warranted heightened scrutiny. *Id.*

Here, the Gender Order discriminates on the basis of transgender status by singling out and demeaning transgender people as persons, indeed, repudiating their very existence. The Gender Order explicitly refers both to gender identity and transgender people, Gender Order § 2(f) (referring to "gender identity" and "males [who] can identify as … women and vice versa"); declares their existence to be "unmoored from biological facts," *id.* § 1; deems their identities to be "false," *id.* § 2(f); orders their exclusion from government recognition and protection, *id.* §§ 3(b)-(d), (f), 4; and coerces others to do the same through manipulating federal funding, *id.* §§ 3(e), (g).

Indeed, as recently as June 30, 2026, the President has explicitly pointed to the Gender Order as reflective of "President Trump's push to eliminate *transgender* insanity." *See* Press Release, The White House, Supreme Court Bolsters President Trump's Push to Eliminate Transgender Insanity (June 30, 2026), https://www.whitehouse.gov/releases/2026/06/supreme-court-bolsters-

17

president-trumps-push-to-eliminate-transgender-insanity/ (emphasis added).

Under the Ninth Circuit's undisturbed precedent, Plaintiffs' equal protection claims are reviewed under heightened scrutiny, a burden the Government cannot meet.

### B. *B.P.J.* Confirms That The Gender Order Classifies Based on Sex And Is Therefore Subject to Heightened Scrutiny.

Furthermore, the Supreme Court in *B.P.J.* found that the laws at issue in those cases classified based on sex and were therefore subject to intermediate scrutiny. Here, as Plaintiffs have argued, the Gender Order classifies based on sex. It expressly defines sex to "not include the concept of gender identity," Gender Order § 2(a); defines the terms "male," "female," "man," and "woman" in ways that exclude transgender men and women, *id.* §§ (b)-(e); and asserts that transgender identities are "false" identities that "[do] not provide a meaningful basis for identification and cannot be recognized as a replacement for sex." *Id.* §§ 2(f)-(g).

The laws at issue in *B.P.J.* and *Hecox* similarly drew lines based on a person's birth-assigned sex, and the Supreme Court found that "the laws make a sex-based classification that triggers intermediate scrutiny." *B.P.J.*,

18

2026 WL 1868739, at *10. And as the district court observed in this case, Defendants have not advanced "any argument that either provision [of the Gender Order that Plaintiffs challenge] advances any legitimate government interest and thus concede the point." ER-33.

## C. *B.P.J.* Is Cabined to the Sports Context, Which Is Irrelevant Here.

Beyond clarifying that the Court did not resolve what standard of scrutiny applies to transgender status classifications and supporting that intermediate scrutiny applies to the sex classifications at issue here, *B.P.J.* has little effect on this case. *B.P.J.* was an intentionally narrow case about whether states may limit school sports teams on the basis of sex assigned at birth (i.e., "biological sex"). In addition to determining whether the States' laws ran afoul of Title IX, the Court's equal protection clause analysis narrowed in on the unique context of sports. The Court upheld the sex-based classifications at issue in *B.P.J.* based on concerns of physical safety and competitive fairness unique to the context of sex-segregated athletic teams for women and girls. *Id.* at *11. The Court repeatedly cabined its analysis to the sports context. *See id.* at *12 ("Here, when analyzing the relationship between the classification based on biological sex and the

19

asserted interests, the sports context is again crucial."); *id.* ("In the distinctive sports context, in other words, the States may treat all biological males the same and treat all biological females the same, given the inherent physical differences between biological males and biological females."). Therefore, the Supreme Court's ruling in *B.P.J.* does not alter the Court's fundamental task here: to analyze the district court's issuance of a preliminary injunction based on the government's targeting of transgender people based on their sex and their status as transgender for disapproval in every aspect of their lives, denial of life-saving services, and repudiation of their very existence.

## CONCLUSION

For the reasons above, as well as those set forth in Plaintiffs-Appellees' Answering Brief (Doc. 23.1), Defendants' appeal should be denied in its entirety.

20

Dated: July 21, 2026

Respectfully submitted,

*s/ Kenneth D. Upton, Jr.*

Camilla B. Taylor
*ctaylor@lambdalegal.org*
Kenneth D. Upton, Jr.
*kupton@lambdalegal.org*
**Lambda Legal Defense and
Education Fund, Inc.**
3656 North Halsted Street
Chicago, Illinois 60613-5974
312-663-4413

Jose Abrigo
*jabrigo@lambdalegal.org*
Omar Gonzalez-Pagan
*ogonzalez-pagan@lambdalegal.org*
**Lambda Legal Defense and
Education Fund, Inc.**
120 Wall Street, 19th Floor
New York, New York 10005-3919
212-809-8585

Jennifer C. Pizer
*jpizer@lambdalegal.org*
Pelecanos*
*pelecanos@lambdalegal.org*
**Lambda Legal Defense and
Education Fund, Inc.**
800 South Figueroa Street, Ste. 1260
Los Angeles, California 90017-2521
213-382-7600

Karen L. Loewy
*kloewy@lambdalegal.org*
**Lambda Legal Defense and
Education Fund, Inc.**
815 16th Street NW, Suite 4140
Washington, DC 20006-4101
202-804-6245

*Mailing address only*

**Counsel for Plaintiffs-Appellees**

21

## CERTIFICATE OF COMPLIANCE

This brief complies with the court's June 30, 2026, order because it is fewer than 25 double-spaced pages. *See* Doc. 51. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using ***Word for Microsoft 365 in Book Antiqua 14-point font***, a proportionally spaced typeface.

*s/ Kenneth D. Upton, Jr.*

22

**CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*s/ Kenneth D. Upton, Jr.*